Filed 4/18/25  P. v. Vega CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B334584 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA490950) |
| v. | |
| ARTURO L. VEGA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deborah S. Brazil, Judge.  Affirmed.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

Arturo L. Vega (defendant) appeals from his convictions on multiple counts of child sexual abuse. Specifically, he was convicted of two counts of sexual intercourse with a child 10 years of age or younger (counts 1 & 2) (Pen. Code, § 288.7, subd. (a)),[1] three counts of oral copulation or sexual penetration of a child 10 years of age or younger (counts 4, 5 & 9) (§ 288.7, subd. (b)), and four counts of lewd acts upon a child (counts 6, 7, 8 & 10) (§ 288, subd. (a)). The jury also found that he committed his offenses against more than one victim. (§ 667.61, subd. (e)(4).)

Defendant argues the trial court abused its discretion in denying his motion for a new trial, admitting an out-of-court statement into evidence, responding to a question from the jury, and the trial court erred in instructing the jury on the crime of sexual penetration of a child charged in counts 4 and 5. As we find any errors were harmless beyond a reasonable doubt, we affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

**Facts**

We summarize the evidence of the crimes adduced at trial, and "we apply the familiar appellate standard that, '[o]n appeal, we . . . construe the facts in the light most favorable to the judgment.'" (*People v. Curl* (2009) 46 Cal.4th 339, 342, fn. 3.)

**Testimony of M.L.** [2]

Defendant's primary victim was his younger half sister, M.L., born in May 2010. She was 12 years old at the time of trial

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    M.L. was called as a witness at trial, but after refusing to answer questions, she was found to be unavailable under

and 10 years old when the crimes were reported to law enforcement. Defendant, born in 1995, is approximately 15 years older than M.L. Defendant and M.L. lived in an apartment with other family members, including M.L.'s half sister, M.B., and their mother, Martina L. M.L. testified to a number instances of abuse by defendant, including:

1. When she was eight or nine years old and was alone with defendant in the living room, he lifted her shirt and reached under her clothing to touch her chest and breast area. M.L. was shocked, surprised, and scared.

2. Defendant touched M.L.'s buttocks over her clothing when they were outside their apartment. She told him to stop because she did not feel comfortable but did not tell her parents because defendant told her not to do so.

3. In the family living room, defendant unbuttoned M.L.'s pants, reached under her clothing, and touched her vagina with his hand. M.L. felt his hand on her vagina, scared, and could not move. She felt part of his hand go inside her vagina and found it uncomfortable. Defendant told M.L. something bad would happen if she told her mother. Defendant also touched M.L.'s vagina more than once when she was eight or nine years old.

4. In his bedroom, defendant unbuttoned M.L.'s clothing, touched her vagina so M.L. felt his hand inside her vagina. She felt discomfort and pain. A similar encounter also happened in the living room when M.L. was nine years old; that time, blood came out of her vagina. On another occasion, defendant digitally penetrated her vagina in the living room while defendant was on the couch, and she was standing.

---

Evidence Code section 240, and her trial testimony was stricken. M.L.'s preliminary hearing testimony was then read to the jury.

5.  In the family living room, defendant pulled down M.L.'s clothing and underwear, and while M.L. was lying on her back, defendant touched her vagina with his penis.  She felt weird, uncomfortable, and a "kind of" pain.  She felt his penis inside her vagina.  Defendant refused to stop when asked to do so by M.L.  M.L. was scared, and defendant told her he would "do something bad" if she told her mother.

6.  In the family living room when M.L. was 10 years old, defendant pulled down her clothing and put his penis into her vagina while she was laying on her back on the couch.  Following intercourse, defendant digitally penetrated M.L.'s vagina.

7.  In the family living room, defendant grabbed M.L.'s hand, placed it on his penis, and moved her hand on his penis.

8.  When M.L. was between the ages of eight and 10, defendant grabbed her head and forced her to orally copulate his penis.

M.L. testified at the preliminary hearing she had tried to tell her sister M.B. about the abuse, but M.B. was angry, and M.L. did not say anything more.[3]

**M.L.'s statement to Harriet Kerr**

Harriet Kerr is a forensic interviewer and director of Stuart House, a center that assesses allegations of child sexual abuse. Kerr interviewed M.L. about defendant's abuse on October 21, 2020; the jury was shown the video recording of the interview. M.L. described various examples of defendant's sexual abuse, including incidents of forced oral copulation of his penis, digital penetration of M.L.'s vagina, penile penetration of her vagina and

---

[3]    In her testimony, M.B. denied that happened, even when confronted with a statement she made to Harriet Kerr that M.L. told her defendant placed his penis next to her head.

4

anus, and moving her hand on his penis. She also explained that defendant ejaculated after some of those encounters.

M.L. told Kerr the most recent incident occurred one day earlier, when her sister M.B. discovered M.L. orally copulating defendant's penis. The abuse was then disclosed to their mother, Martina. M.L. told Kerr that defendant denied the abuse, but when pressed by Martina, defendant confessed by saying, "Fine, I did it."

**M.L.'s statement to Elizabeth Tighe**

Also on October 21, 2020, M.L. underwent a sexual assault examination conducted by nurse Elizabeth Tighe. M.L. told Tighe that defendant was the assailant, the abuse was ongoing, and the last incident occurred several days earlier. M.L. told Tighe that during that incident, defendant penetrated her vagina with his penis, and she orally copulated his penis. She described multiple instances of digital-vaginal penetration, penile-vaginal penetration, forced oral copulation, and that defendant had forced her to touch his penis. M.L. reported she experienced vaginal bleeding during one of the encounters. M.L. also explained at one point while she was touching defendant's penis, "white stuff came out." M.L. told the nurse her sister M.B. had walked into the room and reported the incident to their mother.

**Physical evidence**

Tighe testified she observed M.L. had suffered a loss of hymenal tissue. In her opinion, it was the result of penetrating trauma that caused a tear or laceration in the tissue. Tighe testified injuries like that are present in only two percent of children.

DNA evidence was collected from various parts of M.L.'s body.  Male DNA was detected on samples taken from M.L.'s neck, right palm, vaginal lips, and anus.

DNA evidence was also collected from parts of defendant's body during a sexual assault examination conducted on October 21, 2020.  The sample collected from his penis showed the presence of M.L.'s DNA, which constituted 54 percent of the DNA in the sample.

**Testimony of M.B.**

M.B. is M.L.'s older sister, and she lived with M.L., defendant, and other family members.  Two years older than M.L., M.B. was born in August 2008 and was 14 years old at the time of trial.  M.B. testified to an incident when she was alone in a parked car with defendant, and he placed his hands on her shoulder and slid them down her chest.  At the time, a song with the lyrics "booty and tits" was playing, and defendant parroted those words as he slid his hands down the side of M.B.'s body from her chest to her buttocks.  M.B. reported the incident to her mother, and defendant did not touch her again.

M.B. also testified she once walked into defendant's bedroom and found him there with M.L.  Defendant was lying in bed and M.L. was standing.  M.B. demonstrated how M.L. was "moving her upper torso side to side with her shoulders, moving them forward and backward."

**M.B.'s statement to Kerr**

Kerr interviewed M.B. the day after M.L.'s interview.  A video recording of a portion of the interview was played for the jury.  M.B. told Kerr about the incident when defendant slid his hand down her body and touched her buttocks and breast.  She also told Kerr about a time she walked into a room when

defendant was lying in bed and M.L. was standing next to the bed "moving weird," moving her upper torso side to side and moving her shoulders back and forth.

**Defendant's testimony**

Defendant testified he lived with his family, including M.L. and M.B., in an apartment. He categorically denied all the allegations against him. He denied he ever touched M.L. in an inappropriate or sexual way, and he denied forcing her to touch him in an inappropriate or sexual way. Defendant did not recall the car incident involving M.B. and denied ever having touched her in an inappropriate or sexual way.

**Procedural History**

Defendant was convicted on all counts. The jury also found true the multiple-victim allegation. On August 14, 2023, defendant moved for a new trial on the ground of newly discovered evidence. The motion was denied on August 29, 2023.

Defendant was sentenced to 155 years to life in prison. The sentence comprised consecutive 25 years to life terms for counts 1 and 2, and consecutive 15 years to life terms for counts 4 through 10. Defendant timely appealed. (See § 1237, subd. (b); Cal. Rules of Court, rule 8.308(a).)

## DISCUSSION

I. **There was no abuse of discretion in the denial of the motion for new trial**

Defendant sought a new trial based on newly discovered evidence: two recorded interviews a defense investigator conducted with M.L. and Martina, and the investigator's summary report. In her interview, Martina said after she told M.L. defendant would be sentenced to life in prison, M.L. "told

her that she had lied, and he did not touch her, and it was someone else." Martina also said M.L. had previously falsely accused two others of abuse. In her interview, M.L. said her allegations against defendant were untrue, that she lied at the preliminary hearing and to the nurses, and "she lied because she did not like her brother." M.L. said she refused to testify at trial "because she did not want to deal with the situation anymore."

The trial court denied the motion on the ground the statements were not credible. We find no abuse of discretion.

### A.    *Standard of review*

"'"""The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears."'"" (*People v. Howard* (2010) 51 Cal.4th 15, 42–43.) A trial court abuses its discretion "only when [it] '"exceeds the bounds of reason, all of the circumstances before it being considered."'" (*Department of Motor Vehicles v. Superior Court* (2002) 100 Cal.App.4th 363, 369.)

In our review, we "accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence." (*People v. Nesler* (1997) 16 Cal.4th 561, 582; see *People v. Cua* (2011) 191 Cal.App.4th 582, 608.)

### B.    *The denial was reasonable*

A court may grant a defendant's motion for a new trial "[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial." (§ 1181, subd. (8).) The defendant "must produce . . . the affidavits of the witnesses by whom such [new] evidence is expected to be given." (*Ibid*.) The

8

credibility of the evidence is particularly important when the motion is based upon a witness's recantation. (*People v. Minnick* (1989) 214 Cal.App.3d 1478, 1482 (*Minnick*).)

The motion for a new trial was reasonably denied on the ground that neither Martina's nor M.L.'s statements were credible. First, the trial court reasoned that during the trial, the prosecutor informed the court "that [Martina] was refusing to bring the child [victim] to court," "[s]o the statements by [Martina] purporting to state that [M.L.] lied about the testimony under oath and the statements leading up to the prosecution of this case is without credibility . . . ." Second, it determined that M.L.'s purported recantation was not credible in light of her prior testimony—under oath and subject to cross examination—and her other allegations of defendant's repeated sexual abuse. (See *Minnick, supra*, 214 Cal.App.3d at p. 1482.)

Substantial evidence supported the trial court's conclusion the new evidence was not credible.[4] Martina was reluctant to participate in the prosecution as shown by her failure to bring M.L. and M.B. to court to testify on the date for which they had been subpoenaed. On its face her statement indicates M.L. recanted only after Martina informed her defendant would be

---

[4] While defendant's motion failed to comply with section 1181, subdivision (8)'s requirement that affidavits from the witnesses purporting to have newly discovered evidence be produced (see *People v. Beeler* (1995) 9 Cal.4th 953, 1005, abrogated on other grounds in *People v. Edwards* (2013) 57 Cal.4th 658, 704–705), the trial court nonetheless considered the motion on the merits. Because we find substantial evidence supported the trial court's conclusion the new evidence was not credible, we need not and do not decide whether the failure to produce affidavits was per se fatal to the motion.

9

sentenced to life in prison, suggesting Martina's emotional reaction to defendant's potential sentence likely prompted M.L. to recant in her unsworn statement.

M.L. had extensively testified under oath to many episodes of sexual abuse committed against her by defendant over the course of nearly two years. That testimony was corroborated by physical evidence, and M.L. repeated claims to both Tighe and Kerr.

Defendant argues exculpatory inferences could be drawn in his favor, such as Martina had a motive as M.L.'s mother to hold the perpetrator accountable; M.L.'s DNA may have been transferred to his penis by a shared towel; M.L.'s allegations about sexual abuse "ma[d]e [her] lie more believable and [her] false narrative more convincing"; M.L.'s refusal to cooperate with the prosecution and to testify at trial "suggested that her conscience in falsely implicating her brother was getting to her"; and the recantation would have added to other evidence discrediting M.L. (e.g., her professed dislike of defendant and May's denial she saw anything inappropriate between M.L. and defendant), thus raising questions about the credibility of her allegations. Those speculative inferences do not undermine the contrary inferences drawn by the trial court in denying the motion for new trial. Even assuming those exculpatory inferences were reasonable, that fails to demonstrate the trial court's contrary conclusion was unreasonable or an abuse of discretion. (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 319; *People v. Bean* (1988) 46 Cal.3d 919, 933.)

10

**C.** *The trial court had no duty to conduct an evidentiary hearing sua sponte*

Defendant argues the trial court should have conducted an evidentiary hearing on his motion for a new trial. "The trial court has discretion to determine whether to conduct an evidentiary hearing . . . ." (*People v. Dykes* (2009) 46 Cal.4th 731, 809; see *People v. Rafael B.D.R* (2024) 101 Cal.App.5th 385, 398 (*Rafael B.D.R.*).) Defendant does not identify any authority requiring a court to hold an evidentiary hearing on a motion for a new trial sua sponte. On the contrary, he points us to authority holding "[t]he trial court was not [necessarily] required to hold an evidentiary hearing on the new trial motion," but must """"make whatever inquiry is reasonably necessary"" to resolve the matter.""" (*People v. Hoyt* (2020) 8 Cal.5th 892, 957; see *Rafael B.D.R, supra*, at p. 398.)

The record here demonstrates that the trial court's inquiry was sufficient to resolve the motion. It is also notable defendant did not ask for an evidentiary hearing and therefore forfeited that argument. (See *Vascos Excavation Group LLC v. Gold* (2022) 87 Cal.App.5th 842, 856–857; *In re Stier* (2007) 152 Cal.App.4th 63, 74–75.) On this record, and particularly in light of the lack of witness affidavits supporting the motion, the court reasonably denied it without an evidentiary hearing.

We find no abuse of discretion in the trial court's denial of the motion for a new trial without holding an evidentiary hearing sua sponte.

11

## II. Any error in admitting into evidence a single sentence from M.L.'s out-of-court statement was harmless

The trial court admitted M.L.'s entire interview with Kerr into evidence pursuant to Evidence Code section 1360. While defendant concedes most of the interview was admissible, he argues one sentence was not. Specifically, he claims the sentence where M.L. told Kerr that defendant said, "Fine, I did it," is not a statement describing child abuse and as such is not covered by Evidence Code section 1360.

### A. *Standard of review and applicable law*

"'We review a trial court's decision to admit or exclude evidence "'for abuse of discretion, and [the ruling] will not be disturbed unless there is a showing that the trial court acted in an arbitrary, capricious, or absurd manner resulting in a miscarriage of justice.'"'" (*People v. Young* (2019) 7 Cal.5th 905, 931 (*Young*); see *People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1367 (*Roberto V.*).) "'When evidence is erroneously admitted, we do not reverse a conviction unless it is reasonably probable that a result more favorable to the defendant would have occurred absent the error.'" (*Young*, *supra*, at p. 931.)

"'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a); see *People v. Sanchez* (2016) 63 Cal.4th 665, 674.) In general, "hearsay evidence is inadmissible" (Evid. Code, § 1200, subd. (b)) because it is thought to be "inherently unreliable" (*In re Cindy L.* (1997) 17 Cal.4th 15, 27). However, the evidence can be admitted if "it falls within an exception to the hearsay rule." (*People v. Royal* (2019) 43 Cal.App.5th 121, 143.)

12

And "'[w]hen multiple hearsay is offered, an exception for *each* level of hearsay must be found in order for the evidence to be admissible.'" (*People v. Ayers* (2005) 125 Cal.App.4th 988, 995; see Evid. Code, § 1201.)

There is no dispute M.L.'s out-of-court statement to Kerr, including the sentence defendant admitted he sexually abused her, was hearsay.[5]  It is not disputed it was offered for the truth of the matter asserted—that defendant, in fact, admitted to sexually abusing M.L.  (See *Roberto V., supra*, 93 Cal.App.4th at p. 1366.)  The parties join issue on whether M.L.'s statement to Kerr reporting defendant's admission was admissible.

**B.** *Scope of Evidence Code section 1360 exception*

The trial court determined M.L.'s interview with Kerr, as a whole, was admissible pursuant to the Evidence Code section 1360.  Defendant acknowledges most of M.L.'s statements "directly described alleged child sexual abuse" and were therefore admissible.  However, he challenges the trial court's refusal "to redact from the recording M.L.'s statement to Harriet Kerr claiming that he confessed."

The question is whether a "statement" in Evidence Code section 1360 broadly refers to everything a child says during an interview in which she describes acts of child abuse, or whether it refers only to statements directly describing acts of abuse.  We are skeptical M.L.'s statement that defendant admitted he abused her is a "statement . . . describing any act of child abuse" for purposes of Evidence Code section 1360.

---

[5]  Moreover, the parties agree M.L.'s statement to Kerr about defendant's admission of the sexual abuse contains two layers of hearsay, and at the first level, the admission is admissible as a statement against penal interest.  (See Evid. Code, § 1230.)

13

The hearsay exception was adopted to "allow[] the court to admit a child's hearsay statement describing an act of child abuse upon that child." (*People v. Brodit* (1998) 61 Cal.App.4th 1312, 1329.) That is, it allows the child's out-of-court descriptions of acts of child abuse to be admitted for the truth of what they assert—that the abuse in fact, occurred. (See *Roberto V., supra*, 93 Cal.App.4th at p. 1365.) To provide reassurance that those hearsay statements are reliable, the statute contains additional requirements before a child's statement can be received into evidence. (Evid. Code, § 1360, subd. (a)(2)–(3); *Roberto V.*, at p. 1367.) Those include a finding by the trial court "that the time, content, and circumstances of the statement provide sufficient indicia of reliability" (Evid. Code, § 1360, subd. (a)(2)), and if the child is unavailable as a witness, that "there is evidence of the child abuse . . . that corroborates the statement made by the child" (*id.*, subd. (a)(3)(B)). When a court evaluates the statement's indicia of reliability, it can consider the child's "(1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) use of terminology unexpected of a child of a similar age; and (4) lack of motive to fabricate." (*In re Cindy L., supra*, 17 Cal.4th at pp. 29–30.) Thus, while Evidence Code section 1360 allows hearsay statements describing child abuse to be admitted for their truth, it requires those statements to meet standards for reliability and sometimes even independent corroboration. (See *People v. Eccleston* (2001) 89 Cal.App.4th 436, 445.)

This suggests the exception would not apply to M.L.'s statement that defendant admitted to abusing her. First, the statement, "Fine, I did it," standing alone, does not describe any acts of child abuse committed against M.L. It was not offered

14

into evidence to "describe[e] any act of child abuse . . . performed . . . on the child" (Evid. Code, § 1360, subd. (a)) because nothing in the statement describes any acts. Rather, it was a hearsay statement relevant to prove the truth of the matter it asserted—that defendant had admitted to abusing M.L. Second, the statute's additional safeguards regarding corroboration and reliability are meant to ensure the statement at issue is trustworthy. (See *Roberto V., supra*, 93 Cal.App.4th at p. 1367.) Those safeguards provide no assurance that statements describing other matters are particularly reliable or trustworthy. That M.L.'s statements describing child abuse may have borne those hallmarks of reliability does not suggest her statements about other topics were also reliable. For those reasons, we doubt M.L.'s statement that defendant admitted abusing her would come within the Evidence Code section 1360 hearsay exception.

However, we need not decide that apparently still open question in this case because any error in admitting that sentence was harmless. (See *Young, supra*, 7 Cal.5th at p. 931.)

When evidence is erroneously admitted as a matter of state law, we apply California's standard for harmless error and "evaluate whether 'it is reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error.'" (*People v. Page* (2008) 44 Cal.4th 1, 48–49.) Defendant argues the admission was prejudicial because "this was a close case" and the evidence against him was not overwhelming. We are not persuaded.

First, we reject defendant's implicit suggestion the statement is inherently prejudicial merely because it was a confession. It is well established the prejudicial effect of an even erroneously admitted coerced confessions is determined "under

15

the generally applicable reasonable-probability test," and is not reversible per se. (*People v. Cahill* (1993) 5 Cal.4th 478, 509–510.)

Second, we conclude that in light of the overwhelming evidence, it is not reasonably probable the omission of the fleeting sentence, "Fine, I did it," from M.L.'s interview would have changed the outcome here. That isolated statement was brief and fleeting within M.L.'s more than 90-minute interview with Kerr, particularly in light of M.L.'s extensive descriptions of multiple, grave acts of child abuse during the interview. Kerr was not questioned about the statement during her trial testimony. Neither the prosecutor nor defense counsel mentioned it in their closing statements. And the jury's questions to the court during deliberations about defendant's out-of-court statements suggest they did not remember defendant had made any out-of-court statements, let alone an admission or confession. Moreover, the other evidence of defendant's guilt in this case was not just substantial, but overwhelming.

On this record, any error in admitting M.L.'s isolated and fleeting statement to Kerr that defendant said, "Fine, I did it," in response to her abuse allegations was harmless.

## III. Admission of M.L.'s statement did not violate defendant's Sixth Amendment rights

Defendant argues the admission of M.L.'s out-of-court statement to Kerr that defendant admitted to sexually abusing her also violated his right under the Sixth Amendment to the United States Constitution to confront the witnesses against him.

We review de novo the trial court's determination that the admission of the evidence did not violate the Confrontation

16

Clause. (*People v. Cromer* (2001) 24 Cal.4th 889, 901–902; *People v. Giron-Chamul* (2016) 245 Cal.App.4th 932, 964.)

The Sixth Amendment of the United States Constitution allows the admission of "[t]estimonial statements of witnesses absent from trial . . . only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." (*Crawford v. Washington* (2004) 541 U.S. 36, 59.) It is undisputed that M.L. was unavailable at trial. Defendant argues that M.L.'s statement to Kerr was testimonial. The People do not argue otherwise.

A statement is testimonial when, "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" (*Ohio v. Clark* (2015) 576 U.S. 237, 244, 245; see *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1130–1131; see also *People v. Sisavath* (2004) 118 Cal.App.4th 1396, 1402.) We assume here M.L.'s statement to Kerr was testimonial.

Thus, whether the admission of that statement violated the confrontation clause turns on whether defendant had a prior opportunity to cross examine M.L. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1028, fn. 19.) Here, defendant not only had an opportunity to cross-examine M.L. at the preliminary hearing—he did so and specifically questioned her about the interview with Kerr. Counsel asked M.L. if she "remember[ed] having a talk with a lady" a few years ago "at a place called Stuart House." Nevertheless, defendant argues that opportunity was insufficient to preserve his Sixth Amendment rights: he asserts his counsel was not able to ask M.L. about the admission because the prosecution had not raised that topic in direct

examination, and it would have been counterproductive for him to raise it himself.  We disagree.

First, while the scope of cross-examination is typically limited to the scope of direct examination, defendant does not point to any offer of proof he made to preserve the issue, nor to any ruling by the court preventing him from cross examining M.L. on the topic because it was outside the scope of direct examination.  (*People v. Foss* (2007) 155 Cal.App.4th 113, 127.)  Moreover, defendant did question M.L. about her interview with Kerr.  Thus, defendant has not shown he was prevented from asking about the statement.

Second, we reject defendant's assertion he could not ask M.L. about the admission at the preliminary hearing because his goal then was to demonstrate the evidence was insufficient to hold defendant to answer for the charges.  In fact, defendant's motive in cross-examining M.L. at the preliminary hearing was "closely similar, if not identical to, [his] objectives at the guilt phase of the trial": to discredit M.L.'s claims that he had sexually abused her.  (*People v. Carter* (2005) 36 Cal.4th 1114, 1173.)  And to the extent defendant's counsel made a tactical decision not to question M.L. on that topic at the preliminary hearing does not amount to a violation of his Sixth Amendment rights.  The United States Constitution is not violated "'simply because the defendant did not conduct a particular form of cross-examination that in hindsight might have been more effective.'"  (*Carter*, at pp. 1173–1174; see *People v. Giron-Chamul, supra*, 245 Cal.App.4th at p. 965.)

Defendant concedes he was aware of M.L.'s out-of-court statement at the time of the preliminary hearing.  He had an opportunity to cross-examine her about it—and, in fact, did

18

examine her about her interview with Kerr.  That is all the Sixth Amendment requires.  (See *People v. Harris* (2005) 37 Cal.4th 310, 333.)

## IV.   Any error in instructing the jury on the crime of sexual penetration of a child is harmless

Defendant argues his convictions on counts 4 and 5 for sexual penetration must be reversed because the jury instructions were erroneous.  He claims the instructions did not require the jury to find he committed sexual penetration with the requisite specific intent, and the instructions failed to define the act of sexual penetration.  The People argue any errors were harmless beyond a reasonable doubt.  We find after assessing the instruction given in the context of all the other instructions and the trial record, there is no reasonable likelihood the jury applied the law to the facts inappropriately.  (See *People v. Wilson* (2008) 44 Cal.4th 758, 804–805; *People v. Jablonski* (2006) 37 Cal.4th 774, 831.)

### A.    *Standard of review*

"The legal adequacy of an instruction is reviewed independently." (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.) "When an appellate court addresses a claim of jury misinstruction, it must assess the instructions as a whole, viewing the challenged instruction in context with other instructions, in order to determine if there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner." (*People v. Wilson, supra*, 44 Cal.4th at p. 803.)

19

## B. *The jury instructions given for sexual penetration*

The jury was initially instructed that counts 4, 5 and 9 charged defendant with oral copulation of a child, and the instruction (CALCRIM No. 1128) laid out the elements of that offense. The jury was also instructed the charges in counts 4, 5 and 9 "require[d] general criminal intent," and that in order "to find a person guilty of these crimes, that person must not only commit the prohibited act but must do so with wrongful intent" (CALCRIM No. 252).

After the jury was excused, the prosecutor pointed out an error in the version of CALCRIM No. 1128 that was read to the jury: counts 4 and 5 were based on sexual penetration, while count 9 was based on oral copulation. He asked the instruction to be corrected to state defendant was charged with "oral copulation or sexual penetration of the child." Defense counsel declined the court's invitation to respond and submitted.

When the jury returned to court, they were told the court had "made a small mistake on when I read you the package last we were together." The trial court then read a new version of CALCRIM No. 1128 as follows: "The defendant is charged in counts 4, 5, and 9 with engaging in oral copulation with a child ten years of age or younger, and it is oral copulation or sexual penetration. To prove that the defendant is guilty of this crime, the People must prove, one, the defendant engaged in an act of oral copulation or sexual penetration with [M.L.]; [¶] Two, when the defendant did so, [M.L.] was ten years of age or younger; [¶] Three, at the time of the act, the defendant was at least 18 years old. Oral copulation is any contact, no matter how slight, between the mouth of one person and the sexual organ or anus or

20

another person.  Penetration is not required.  [¶]  So the charges in counts 4, 5, and 9 include oral copulation or sexual penetration."

Defense counsel did not object to the modification of the instruction.  The court did not alter the version of CALCRIM No. 252 given to the jury.

Certain sexually based crimes "require a showing of only *general intent*, that is, the intent to commit an act 'without reference to intent to do a further act or achieve a future consequence.'" (*People v. Warner* (2006) 39 Cal.4th 548, 557 (*Warner*).)  Oral copulation of a child 10 years of age or younger (§ 288.7, subd. (b)) is a general intent crime. (*People v. Mendoza* (2015) 240 Cal.App.4th 72, 79–80; see *Warner*, at p. 557.)

By contrast, other sexually based offenses "require a showing of *specific intent*, meaning the intent to 'do some further act or achieve some additional consequence.'" (*Warner, supra*, 39 Cal.4th at p. 557.)  The offense of sexual penetration of a child 10 years of age or younger (§ 288.7, subd. (b)) defines sexual penetration by reference to the definition contained in section 289.  That statute, in turn, defines sexual penetration as "the act of causing the penetration, however slight, of the genital or anal opening of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object."  (§ 289, subd. (k)(1).)  Importantly, the crime requires the penetration be done "for the purpose of sexual arousal, gratification, or abuse." (*Ibid.*)  The language "for the purpose of" denotes a specific intent crime. (See *People v. Hering* (1999) 20 Cal.4th 440, 446.)  Therefore, we agree with our colleagues in the Third, Fifth, and Sixth Districts that sexual penetration of a child (§ 288.7, subd. (b)) is a specific

21

intent crime. (See *People v. Ngo* (2014) 225 Cal.App.4th 126, 157 (*Ngo*); *People v. Saavedra* (2018) 24 Cal.App.5th 605, 613–614 (*Saavedra*); *People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1167 & fn. 4.)

Because the crime of sexual penetration of a child is a specific intent crime, the trial court should have instructed the jury "on the concurrence of act and 'specific intent'" in connection with that crime. (*People v. Alvarez* (1996) 14 Cal.4th 155, 220; see *Saavedra, supra*, 24 Cal.App.5th at p. 614.)

The crime of sexual penetration of a child defines the act of sexual penetration as "causing the penetration, however slight, of the genital or anal opening of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device, or by any unknown object." (§ 289, subd. (k)(1).) In that regard, a " '[f]oreign object, substance, instrument, or device' . . . include[s] any part of the body," but not "a sexual organ" such as a penis. (*Id.*, subd. (k)(2); see *People v. Wilcox* (1986) 177 Cal.App.3d 715, 717.)

The standard jury instructions for the crime of sexual penetration of a child reflect those statutory definitions. (See *People v. Estrada* (1995) 11 Cal.4th 568, 574.) Those instructions define sexual penetration as follows: "*Sexual penetration* means (penetration, however slight, of the genital or anal opening of the other person . . .) by any foreign object, substance, instrument, device, or any unknown object for the purpose of sexual abuse, arousal, or gratification." (CALCRIM No. 1128; see *Saavedra, supra*, 24 Cal.App.5th at pp. 614–616.) In addition, that standard instruction further specifies that "[a] *foreign object, substance, instrument, or device* includes any part of the body except a sexual organ." (CALCRIM No. 1128.)

22

When the judge tried to correct the version of CALCRIM No. 1128, it had initially given to the jury to add that Defendant had been charged in counts 4 and 5 with sexual penetration of a child, the judge did not define sexual penetration. The failure to explain what constituted the act of sexual penetration was error. The People do not argue otherwise.

C. ***The instructional errors were harmless***

"'All criminal defendants have the right to "a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."'" (*People v. Rivera* (2019) 7 Cal.5th 306, 333.) An instructional error that "'reliev[es] the prosecution of the burden of proving beyond a reasonable doubt each element of the charged offense'" is "subject to harmless error analysis under the *Chapman* standard of review." (*People v. Cox* (2000) 23 Cal.4th 665, 676; see *People v. Schuller* (2023) 15 Cal.5th 237, 243 (*Schuller*).) Under that standard, "the reviewing court [must] reverse the conviction unless it concludes that no 'rational juror who made the findings reflected in the verdict and heard the evidence at trial could have had reasonable doubt regarding the findings necessary to convict the defendant [absent the instructional error].'" (*Schuller, supra*, at p. 244; see *Chapman v. California* (1967) 386 U.S. 18, 24.)

The instructional errors we have identified relieved the prosecution of proving the elements of sexual penetration of a child, as required for counts 4 and 5. "'"The elements of crimes are of three varieties: actus reus, mens rea and attendant circumstances,"'" and "'must be proved by the prosecution to sustain a conviction.'" (*People v. Marquez* (2023) 89 Cal.App.5th 1212, 1218.) As discussed above, there were errors in the

23

instructions on the sexual penetration counts: the failure to instruct on the mental state element (specific intent) and the failure to instruct on the actus reus element (sexual penetration). (See *Ngo, supra*, 225 Cal.App.4th at p. 157.)

To determine whether those errors were prejudicial, we consider their effect in tandem. (See *People v. Mil* (2012) 53 Cal.4th 400, 412.) To show harmlessness, "the People [must] prove beyond a reasonable doubt that the error[s] did not contribute to the verdict in the case at hand; one way to meet this burden is to show from the verdicts that the jury necessarily found all the elements required to convict under a proper theory." (*People v. Lewis* (2006) 139 Cal.App.4th 874, 884.) When we are confronted with "[m]isdescriptions (or omissions) of the elements," those "errors may be found harmless if it would be impossible, based on the evidence, for a jury to make the findings reflected in its verdict without also finding the missing fact as well." (*In re Lopez* (2023) 14 Cal.5th 562, 568 (*Lopez*).)

With regard to intent, we agree with the People's argument that, were that the sole instructional error, it would be harmless beyond a reasonable doubt. The theory of defendant's defense at trial was to categorically deny he had ever touched M.L. inappropriately at all—not to admit he had penetrated her but did not do so "for the purpose of sexual arousal, gratification, or abuse." (§ 289, subd. (k)(1).) Defendant points to no evidence from which the jury could have concluded penetration occurred for any other purpose, and we see none ourselves. (See *Saavedra, supra*, 24 Cal.App.5th at p. 616.)

As our review allows us to consider the entire charge to the jury—not just a single instruction (see *People v. Hughes* (2002) 27 Cal.4th 287, 360; *People v. Castillo* (1997) 16 Cal.4th 1009, 1016),

we are able to take into account the whole picture rather than resorting to single omission in one instruction in our search for justice.

Under California law a """"misdirection of the jury"""" from instructional error does not require reversal unless """"an examination of the *entire cause, including the evidence*"""" indicates the error resulted in a """"miscarriage of justice."""" (*People v. Larsen* (2012) 205 Cal.App.4th 810, 829.)  A distinction is drawn "'between instructional error that entirely precludes jury consideration of an element of an offense and that which affects only an aspect of an element.'" (*Ibid*.)

Here, though the jury was not explicitly told digital penetration was a specific intent crime, they were told of the particular mental state required to find defendant guilty of other penetration of his minor half sisters by the prosecutor during closing argument.  The jurors were told defendant committed sexual acts with his half sisters with the intent of arousing and appealing to or gratifying the lust, passions, or sexual desires of himself or either of his young victims.  In other words they were told of the mental state the law requires before convicting one of such offenses.  There could be no misunderstanding by any reasonable juror.

In *Saavedra, supra*, 24 Cal.App.5th 605, the court reasoned the record on appeal contained no evidence that could rationally lead to finding a charged act of penetration in that case was committed for a purpose *other than* sexual arousal, gratification or abuse.  In that case, as here, the defendant denied any culpability.  The *Saavedra* court found the error there to be harmless.

The People argue any prejudice from the instructional errors was mitigated by the prosecutor's closing argument, in which he told the jury that counts 4 and 5 were based on digital penetration. (See *People v. Aranda* (2012) 55 Cal.4th 342, 370.) While not a substitute for correct instructions from the court (*People v. Rogers* (2006) 39 Cal.4th 826, 869–870), the jurors were not misled.

## V. There was no abuse of discretion in replying to a jury question during deliberations

During deliberations, the jury asked a question regarding one of the instructions. Specifically, "Please clarify the defendants [*sic*] oral statement before the trial referred to."[6] After the trial court and counsel conferred, the following response was given: "Please refer to CALCRIM 200, paragraph 2. For the record, that paragraph states you must decide what the facts are. It is up to all of you, and you alone, to decide what happened based on the evidence that's been presented to you in this trial."

After deliberations resumed, the jury asked another question: "Where do we find this?" After another conference involving the trial court and counsel, the jury was told: "Is there

---

[6] The version of CALCRIM No. 358 that was read to the jury was as follows: "You have heard evidence that the defendant made an oral statement before the trial. You must decide whether the defendant made any such statement, in whole or in part. If you decide that the defendant made such a statement, consider the statement, along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement. Consider with caution any statement made by the defendant tending to show his guilt unless the statement was written or otherwise recorded."

specific evidence you are asking to review?  And if so, what is it?"
Deliberations resumed, and a guilty verdict was reached.

We find no abuse of discretion in the trial court's response.

## A.   *Standard of review and applicable law*

"An appellate court applies the abuse of discretion standard
of review to any decision by a trial court to instruct, or not to
instruct, in its exercise of its supervision over a deliberating
jury."  (*People v. Waidla* (2000) 22 Cal.4th 690, 745–746; see
*People v. Fleming* (2018) 27 Cal.App.5th 754, 765 (*Fleming*).)
"'[T]he legal accuracy of any supplemental instructions provided'"
is reviewed de novo.  (*Fleming*, at p. 765.)

The trial court "'has a primary duty to help the jury
understand the legal principles it is asked to apply.'"  (*Fleming,
supra*, 27 Cal.App.5th p. 766.)  In that regard, "when the jury
'desire[s] to be informed on any point of law arising in the
case . . . the information required must be given'" by the court.
(*People v. Brooks* (2017) 3 Cal.5th 1, 97; see § 1138.)

## B.   *The question was properly answered*

The trial court reasonably construed the jury to be asking
"what was the defendant's oral statement before trial"—that is, a
factual question to identify the oral statement.  That the jury was
asking to be pointed toward the defendant's statement is
underscored by its follow-up question, "Where do we find this?"

For the first time on appeal, defendant argues the trial
court misunderstood the jury's question.  We note that while
defendant now disagrees with the court's interpretation of the
question, he did not raise the objection at trial.  Not only did
defendant fail to object, but the court's response was developed
after "collective agreement" among the attorneys and the court.
Even assuming that did not forfeit defendant's opportunity to

appeal (*People v. Boyce* (2014) 59 Cal.4th 672, 699 (*Boyce*)), he fails to demonstrate the trial court abused its discretion in interpreting the jury's question.

And on this record, "it is not reasonably likely the court's response misled the jury." (*Boyce, supra*, 59 Cal.4th at p. 699.) Defendant's speculation the jurors' question was motivated by their confusion about what qualified as an "oral statement before the trial" strains credulity. Defendant has not identified any of his statements that fell outside the "oral statement before the trial" category (e.g., written or recorded statements) that possibly could have confused the jury. (Cf. *People v. Xiong* (2020) 54 Cal.App.5th 1046, 1080 [tape-recorded oral admission].) Rather, the statements he points to are all oral statements: his admission to Martina, his verbal threats to M.L., and his "booty and tits" comment to M.B. The version of CALCRIM No. 358 that was read to the jury already told them to "[c]onsider with caution any statement made by the defendant tending to show his guilt unless the statement was written or otherwise recorded." "'We presume the jury followed [this] instruction[].'" (*People v. Chhoun* (2021) 11 Cal.5th 1, 30.)

In fact, defendant does not argue the trial court's response misstated the law; instead he argues it should have told the jury that CALCRIM No. 358 applies broadly "'to any extrajudicial oral statement by the defendant that is used by the prosecution to prove the defendant's guilt.'" (*People v. Diaz* (2015) 60 Cal.4th 1176, 1187.) But the substance of that proposal was conveyed to the jury by the version of CALCRIM No. 358 that was read to them. (See *People v. Mora and Rangel* (2018) 5 Cal.5th 442, 507.) Defendant has not identified any statements in this record that could have created confusion among the jurors. There was no

28

need for the trial court to give an essentially redundant "clarification."

The trial court reasonably interpreted the jury's question that it correctly answered. While defendant apparently now would have preferred to provide the jury with further details, that does not render the court's response an abuse of discretion.

## VI. The cumulative effect of any errors does not warrant reversal

Finally, defendant argues the cumulative effect of errors requires reversal of his convictions. We disagree.

### A. *Standard of review*

"'Under the cumulative error doctrine, the reviewing court must "review each allegation and assess the cumulative effect of any errors to see if it is reasonably probable the jury would have reached a result more favorable to defendant in their absence."' [Citation.] 'The "litmus test" for cumulative error "is whether defendant received due process and a fair trial."'" (*People v. Mireles* (2018) 21 Cal.App.5th 237, 249.)

### B. *Reversal on the remaining counts is not required*

As to defendant's contentions of error, we rejected his arguments that the trial court erred in denying his motion for a new trial or in answering the jury's question. While we assumed some error as discussed above, we find those errors "were no more prejudicial together." (*People v. Poletti* (2015) 240 Cal.App.4th 1191, 1217.) They certainly do not establish "a clear showing of a miscarriage of justice." (*People v. Hill* (1998) 17 Cal.4th 800, 844.) "'[N]one of the errors, individually or cumulatively, ""significantly influence[d] the fairness of [defendants'] trial . . . .""'" (*People v. Coffman and Marlow* (2004)

34 Cal.4th 1, 128.)  Thus, "we do not find that the combination of the errors and assumed errors here require reversal of [defendant's remaining] conviction[s]."  (*People v. Hin* (2025) 17 Cal.5th 401, 508; see *People v. Koontz* (2002) 27 Cal.4th 1041, 1094 [no cumulative prejudice where there was one nonprejudicial error in guilt phase].)

## DISPOSITION

The judgment is affirmed.

_____
CHAVEZ, J.

I concur:

_____
LUI, P. J.

**People v. Vega**
**B334584**

**RICHARDSON, J., Concurring and dissenting.**

Although I agree with the majority's analysis and conclusions in the Discussion, parts I through III and V through VI, I do not agree with part IV. In my view, the instructional errors regarding sexual penetration (counts 4 & 5) were not harmless beyond a reasonable doubt. I would reverse Defendant's convictions on those counts.

I agree with the majority that the jury instructions on sexual penetration contained two errors in describing the elements of that crime: a failure to instruct on the mens rea element (specific intent) and a failure to instruct on the actus reus element (sexual penetration). (See *People v. Ngo* (2014) 225 Cal.App.4th 126, 157 (*Ngo*).) Those kinds of errors "may be found harmless if it would be impossible, based on the evidence, for a jury to make the findings reflected in its verdict without also finding the missing fact as well." (*In re Lopez* (2023) 14 Cal.5th 562, 568 (*Lopez*).) In my view, this jury could have made the findings it did on the other counts without necessarily determining that Defendant digitally penetrated M.L. with the requisite specific intent.

However, I agree with the majority that if the only instructional error had been a failure to indicate the mental state required for sexual penetration, it would have been harmless. There was no evidence upon which the jury could have relied to find that Defendant had penetrated M.L. for any purpose other than "sexual arousal, gratification, or abuse." (Pen. Code, § 289,

1

subd. (k)(1); see *People v. Saavedra* (2018) 24 Cal.App.5th 605, 616 (*Saavedra*).) Nevertheless, in many cases in which a jury was misinstructed regarding intent, they were also told, via CALCRIM No. 1128, the correct definition of sexual penetration and its attendant purpose. (*Saavedra*, at pp. 612–616; *Ngo, supra*, 225 Cal.App.4th at pp. 146, 161–163; *People v. ZarateCastillo* (2016) 244 Cal.App.4th 1161, 1166–1169.) Because this jury did not receive a correct version of CALCRIM No. 1128, the question of harmlessness is closer here.

What convinces me the error was prejudicial is that the failure to define "sexual penetration" in the version of CALCRIM No. 1128 given to the jury did not merely omit the required mental state of the crime, but also failed to explain the means by which the penetrative act itself had to be accomplished. Here, there was evidence Defendant had penetrated M.L. both with his penis and his fingers, but Defendant categorically denied having done either. A juror could rationally credit only the portion of Defendant's denial as it applied to digital penetration while rejecting his denial as to the rest of the abuse. (See *Lopez, supra*, 14 Cal.5th at pp. 580-581; *People v. Madrigal* (2023) 93 Cal.App.5th 219, 243.) Even if I am dubious about Defendant's credibility, it is not this court's role to "reweigh the strength of each party's evidence" or " ' "become . . . a second jury to determine whether the defendant is guilty." ' " (*Madrigal*, at p. 243.) In my view, the majority's discussion of the failure to instruct on the mens rea does not sufficiently address the failure to instruct on the actus reus.

Moreover, the rendered guilty verdicts and the record as a whole do not convince me all jurors necessarily found Defendant digitally penetrated M.L., as required for the crime of sexual

penetration.  " 'The reviewing court examines what the jury necessarily did find and asks whether it would be impossible, on the evidence, for the jury to find *that* without *also* finding the missing fact as well.' "  (*Lopez, supra,* 14 Cal.5th at p. 591.)  Here, it is not "impossible . . . for a jury to make the findings reflected in its verdict" and still determine that no digital penetration occurred.  (See *id.* at p. 568.)  An additional inferential step is required to go from the existing jury findings (penetration generally) to the missing finding (digital penetration).  (*People v. Hin* (2025) 17 Cal.5th 401, 454.)  While that inference may be quite reasonable, a contrary inference is not impossible.  (*Ibid.*)  I recognize the prosecutor's closing argument told the jury counts 4 and 5 were based on digital penetration, but "arguments of counsel cannot substitute for correct instructions from the court."  (*People v. Rogers* (2006) 39 Cal.4th 826, 869.)  And neither the prosecutor nor defense counsel (let alone the judge) explained to this jury that counts 4 and 5 could *not* be based on penile penetration.

Thus, I cannot say "any rational jury would surely have rendered the same verdict had it been properly instructed."  (*Lopez, supra,* 14 Cal.5th at p. 584.)

I would reverse Defendant's convictions on counts 4 and 5.


RICHARDSON, J.

3